IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN SEMBRANO,<br><br>        Defendant. | Case No. 19-cr-00651-CRB-1<br><br>**ORDER RE: PLEA AGREEMENT** |

       The Government has responded to the Court's concerns regarding the proposed Plea Agreement in this case by arguing that compassionate release requires "case-by-case analysis of each individual motion." United States' Response to May 13, 2020 Order (dkt. 29) at 6. The Court agrees. Indeed, that is precisely why this Court has questioned or rejected compassionate release waivers in this case and others. When a defendant knowingly and voluntarily waives his or her right to seek relief under 18 U.S.C. § 3582(c)(1)(A), courts cannot individually analyze the merits of a subsequent compassionate release motion. See United States v. Charles, 581 F.3d 927, 931 (9th Cir. 2009). And when "Section 3582 waivers [are] routinely included in plea agreements in broad form," United States' Response at 2, "case-by-case analysis" becomes impossible, id. at 6. An argument for "case-by-case analysis" is an argument against § 3582 waivers—unless one believes that federal prosecutors rather than courts should have the final say on whether compassionate release should be granted or denied. But Congress has decided that courts, not prosecutors, should be the final arbitrators of requests for compassionate release.

       The Court understands from the Government's brief and public statements that the proposed Plea Agreement in this case no longer contains any waiver of Sembrano's right to pursue relief under 18 U.S.C. § 3582(c)(1)(A). See United States' Response at 3 ("[I]n response to

1  updated Department of Justice guidance, the United States removed the Section 3582 waiver from
2  all pending plea offers including the plea agreement questioned by the Court in this case."); see
3  also Bob Egelko, SF Federal Prosecutor Eases Rules for Sick Inmates Seeking Early Release, S.F.
4  CHRON. (May 17, 2020), http://www.sfchronicle.com/crime/article/SF-s-federal-prosecutor-
5  eases-requirements-for-15273841.php#photo-19173259.  Assuming that is the case, the Court's
6  concerns regarding the proposed Plea Agreement are resolved.

7  The Court also notes that the Government's brief not only responds to the Court's
8  questions regarding this proposed Plea Agreement, but also "address[es] the Court's criticisms of
9  Section 3582 waivers" in other cases.  See id. at 3–8.  Because the Government fundamentally
10 misunderstands the Court's concerns, some clarification may be desirable.

11 Most of the Government's brief describes various motions for compassionate release it
12 believes were not meritorious.  Id. at 1–6.  But the Court has no objection to the Government
13 opposing compassionate release on the merits.  On the contrary, the Government's arguments
14 against the merits of a compassionate release motion are often helpful to the Court's ultimate
15 determination whether to grant that motion.  It is unnecessary for the Government to defend its
16 record on this point.

17 However, the fact that the Government appropriately and often successfully opposes
18 compassionate release motions on the merits does not explain why defendants should waive their
19 right to bring such a motion at all.  If the Government can oppose—and courts can deny—motions
20 for compassionate release on the merits, why is it also necessary for defendants to waive or limit
21 their right to move for compassionate release before the merits of such a motion are knowable?

22 Although the Government refers to the extra work that opposing compassionate release
23 creates for its attorneys, see, e.g. id. at 2, and the short timelines for briefing such motions
24 necessitated by the current public health crisis, see, e.g. id. at 6, the answer cannot be efficiency.
25 According to the Government, "there has not been a single case in this district where the United
26 States relied solely on a Section 3582 waiver to argue against compassionate release."  Id. at 3.  So
27 compassionate release waivers have only increased the work of opposing (not to mention bringing
28 and deciding) compassionate release motions.  Waiver was an additional argument for the parties

2

to brief and courts to decide vis a vis motions that, according to the Government, should have failed on independent grounds.

Nor can it be the case that extracting a § 3582(c)(1)(A) waiver when a defendant pleads guilty facilitates "case-by-case analysis of each individual motion." Id. at 6. The Government appears to suggest that the Court's concerns about compassionate release waivers are inapplicable in this case, because Sembrano is twenty-eight "and has not claimed any medical issues making him more vulnerable to COVID-19 than the average person."[1] Id. at 7. But there is no contention that the Government sought a compassionate release waiver in this case specifically because Sembrano was less likely than other defendants to qualify for that relief. In fact the Government avers the opposite is true: until just months ago "Section 3582 waivers were routinely included in plea agreements in broad form." See id. at 2.

And more fundamentally, as the Court has explained in another case, compassionate release exists to address the unforeseeable. Order Rejecting Plea Agreement at 8, United States v. Funez Osorto, No. 19-cr-00381-CRB-4 (N.D. Cal. May 11, 2020), ECF No. 210. If it were already obvious that Sembrano suffered from a terminal illness, see U.S.S.G. § 1B1.13 cmt. n. 1(A)(i), or that his incarceration would leave minor children uncared for, see id. § 1B1.13 cmt. n. 1(C)(i), the Court could account for those circumstances at sentencing. But such tragedies are often unpredictable. Compassionate release exists so that courts can conduct a "case-by-case analysis of each individual motion," see United States' Response at 6, once the grounds for the motion become known. Compassionate release waivers undermine that goal.

So how does such a waiver "assist the United States in resisting unmeritorious motions"? See id. at 8. The Court can think of only one answer. If the Government doubts that it will prevail on the merits, waiver gives it an ace in the hole. A waiver is enforceable if it "encompasses" the relief sought and was "knowingly and voluntarily made." Charles, 581 F.3d at 931 (internal quotation marks and citations omitted). So, rather than risk a court decision it disagrees with, the Government can rely on its disproportionate power in negotiating the terms of the plea agreement

---

[1] The Government makes a similar argument about a defendant in another case, Allan Josue Funez Osorto. United States' Response at 7.

to foreclose in advance any compassionate release motion it think is unmeritorious.[2]  In this regard, it is notable that courts in this district have granted numerous compassionate release motions over the Government's opposition.  See, e.g. United States' Opposition to Defendant's Motion for Compassionate Release from Custody, United States v. Sholler, No. 17-cr-00181-SI (N.D. Cal. May 13, 2020), ECF No. 116; United States' Opposition to Defendant's Motion for Compassionate Release from Custody, United States v. Sarkisyan, No. 15-cr-00234-CRB-15 (N.D. Cal. May 11, 2020), ECF No. 1474; United States' Opposition to Defendant's Motion for Compassionate Release from Custody, United States v. Reid, No. 17-cr-00175-CRB-2 (N.D. Cal. April 17, 2020), ECF No. 545; United States's Opposition to Defendant's Motion for Compassionate Release from Custody, United States v. Trent, No. 16-cr-00178-CRB (N.D. Cal. Apr. 9, 2020), ECF No. 108, United States' Opposition to Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A), United States v. Burrill, No. 17-cr-00491-RS-2 (N.D. Cal. Apr. 6, 2020), ECF No. 306.  And of the over 130 motions for compassionate release filed in this district in the last three months, the Government identifies only one case where it did not oppose early release and three others where it withdrew its initial opposition.  See United States' Response at 2 n.3 & 6.

Congress did not intend for federal prosecutors to have the final say on a defendant's request for compassionate release.  Prior to the First Step Act, the BOP served as the gatekeeper for compassionate release motions.  Dept. of Justice, Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program 1 (2013).  And when the BOP was deciding whether to bring a compassionate release motion, it consulted the Assistant United States Attorney who prosecuted the relevant case.  Id. at 2–3.  But when it passed the First Step Act, Congress

---

[2] The Government points out "the significant benefit of the bargain received via a defendant's plea agreement."  United States' Response at 4.  The Court does not disagree.  If there was no benefit to pleading guilty, the vast majority of criminal cases would not be resolved by plea bargain. United States Courts, Criminal Cases, USCOURTS.GOV (last visited May 26, 2020), http://www.uscourts.gov/about-federal-courts/types-cases/criminal-cases.  But again, this point misunderstands the Court's concerns.  Compassionate release waivers are standard terms that defendants have little or no power to reject.  Or else why is it that "[b]efore the arrival of COVID-19, Section 3582 waivers were routinely included in plea agreements in broad form"?  See United States' Response at 2.

4

made courts rather than executive agencies the final arbiters of compassionate release motions. Federal prosecutors play a role in helping courts evaluate § 3582(c)(1)(A) motions, but they are not the final decisionmakers.  It is unacceptable for the United States Attorneys' Office to use its favorable position at the plea bargaining table to abrogate a role Congress designated for the courts.

As noted above, if the proposed Plea Agreement no longer contains a § 3582(c)(1)(A) waiver, the Court's concerns are resolved.  If the proposed Plea Agreement in this case does contain such a waiver, the parties should inform the Court immediately.

**IT IS SO ORDERED.**

Dated: May 28, 2020



CHARLES R. BREYER
United States District Judge